UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| NED MINGUS, No. 092133 | No. 05-73842 |
| Plaintiff, | District Judge Marianne O. Battani |
| v. | Magistrate Judge R. Steven Whalen |
| SHERILYN BUTLER, | |
| Defendant. / | |

# REPORT AND RECOMMENDATION

Before the Court is *Defendant Butler's Motion for Summary Judgment* [Docket #38], filed February 21, 2008, which has been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that the Motion be GRANTED IN PART AND DENIED IN PART, as follows:

1. ADA Claims against Defendant in her individual capacity should be DISMISSED.

2. Defendant's motion for dismissal regarding monetary damages under the ADA against Defendant in her official capacity should be DENIED.

3. Claims for monetary damages pursuant to 42 U.S.C. §1983 against Defendant in her official capacity should be DISMISSED.

4. Defendant's motion for dismissal on the basis on qualified immunity should be DENIED.

5. Defendant's motion for dismissal of Plaintiff's Fourteenth Amendment equal protection claims should be DENIED.

6. Defendant's motion for dismissal of Plaintiff's request for injunctive relief

> regarding the issuance of key locks should be GRANTED on the basis of mootness.

7. Defendant's motion for dismissal of Plaintiff's remaining claims for injunctive relief should be DENIED.

## I. FACTUAL AND PROCEDURAL BACKGROUND

**A. Case No. 03-60095**

Plaintiff, a Michigan Department of Corrections (MDOC) inmate, originally filed suit on May 2, 2003, alleging federal claims under 42 U.S.C. §1983, the Americans with Disability Act ("ADA"), and a state law claim of gross negligence. Case No. 03-60095. Plaintiff, allegedly suffering from macular degeneration along with other physical infirmities, claimed that Defendants Drs. Antonini and Ahmed, as well as Defendant Correctional Medical Services ("CMS") were deliberately indifferent to his medical needs, based on a denial of his request for referral to an off-site orthopedic clinic, and the failure to treat his hip condition. Plaintiff alleged further that Defendant Antonini knowingly prescribed medication that exacerbated his vision problems.

Plaintiff also brought an Eighth Amendment and ADA claims against Defendants Smith, Butler, and Epp for denying grievances related to this issue and for refusing to refer him to an outside clinic. Plaintiff also alleged that Defendant Butler, R.N., then Health Unit Manager at the Cotton Correctional Facility, refused to accommodate his need for both a single room and key lock. Plaintiff alleged that Defendant Butler refused to place him in a single room knowing that as a result of his medical and vision problems, Plaintiff faced a

substantial risk of serious harm from other inmates.

On April 8, 2004, the Honorable Marianne O. Battani dismissed claims against Defendants CMS, Epp, Smith, and Straub on the basis that Plaintiff had failed to exhaust his administrative remedies before filing suit, but denied a motion for dismissal by Defendants Antonini and Ahmed. Case No. 03-60095, *Docket #33* at 5. The district court also denied Defendant Butler's motion to dismiss and/or summary judgment of either the Eighth Amendment or ADA claims, stating as follows:

> "The Court finds that Plaintiff has alleged sufficient facts to resist dismissal. During the period of the alleged unconstitutional conduct, Defendant Butler, a Registered Nurse, was the Health Unit Manager at the Cotton Correctional Facility. Plaintiff claims that Butler was aware of his need for a single-occupancy room, key operated locks, and a referral to an orthopedic specialist. Without assessing whether Plaintiff can ultimately succeed on his §1983 claim, the Court observes that there is considerable evidence in the record indicating Butler was aware of several of Plaintiff's medical 'needs.' In two letters to Butler, dated March 1 and 16, 2002, Plaintiff explained that he needed a single room with key locks because his deteriorating eyesight left him and his property vulnerable to predators. On March 31, 2002, Plaintiff filed Grievance No. JCF 02-01-0820-12-I, describing his eyesight problems and alleging that Butler improperly denied his request for a single room. Assuming that these factual allegations are true, the Court finds that Plaintiff has offered enough evidence to support his claim that Butler approved and knowingly acquiesced in the alleged unconstitutional conduct."

*Id*. at 9.

On March 10, 2005, the district court granted in part and denied in part Defendant Butler's renewed motion for dismissal and/or summary judgment, finding that because Plaintiff's ADA claims sounded in equal protection rather than due process, he was not

entitled to money damages under the Act but could seek injunctive remedies. Case No. 03-60095, *Docket #55* at 3; *Tennessee v. Lane,* 541 U.S. 509, 124 S. Ct., 158 L.Ed.2d 820 (2004). The district court otherwise denied Defendant Butler's motion, adopting the undersigned's finding that she was not entitled dismissal on the basis of qualified immunity. The district court set forth the surviving allegations as follows:

> "Plaintiff's 28 U.S.C. §1983 claim is permitted to proceed only insofar as it alleges Defendant exhibited deliberate indifference as a supervisor in failing to provide him with a single-occupancy room or a keyed lock. . . . Plaintiff's ADA Title II claim is permitted to proceed only insofar as it seeks prospective injunctive relief against Defendant in her official capacity."

*Id.*, *Docket #55* at 4.

On August 11, 2005, the parties stipulated to dismissal of the surviving claims without prejudice.

### B. The Present Case

On October 6, 2005, Plaintiff again filed suit, naming only Defendant Butler. Plaintiff's current factual allegations are limited to Butler's refusal to provide him with either key locks or a single-occupancy cell and are essentially identical to the claims which survived summary judgment in the previous case. *Id.*, *Docket #55* at 4.

Specifically, Plaintiff alleges that on February 16, 2002, Plaintiff requested a single-occupancy room, maintaining that because of his deteriorating eyesight as a result of macular degeneration and cataracts, "he could no longer see to open his locks or protect his property,"

resulting in the theft of his property by other inmates. *Complaint* at ¶8. On March 2, 2002, Plaintiff made a written request to Defendant Butler after being informed by former defendant Antonini that Defendant Butler was "the person in charge of handling single-occupancy room requests." *Id.* at ¶9. Plaintiff alleges that at the time he made the request, "he could no longer see the combinations of his locks." *Id.* On March 11 and 13, 2002, Plaintiff again requested a single-occupancy cell. *Id.* at ¶10. He was informed by staff nurse Mallo that she had discussed the matter with Defendant Butler, who informed her that "Plaintiff did not meet the criteria for a single-occupancy room." *Id.* However, Mallo informed Plaintiff that "arrangements would be made for [him] to receive two key-operated locks." *Id.* On March 16, 2002, Plaintiff again wrote to Defendant Butler, noting that while some of the single-occupancy cells were being used by disabled prisoners, a number of the individuals currently occupying single cells did not qualify for such housing. *Id.* at ¶11. Defendant Butler again informed Plaintiff that he did not qualify for a single-occupancy room. *Id.* Plaintiff alleges that as of October 6, 2005, he had not received a "key operated" lock despite a July 30, 2003 physician's order directing that he be provided with the key operated lock. *Id.* at ¶¶30-31. Subsequent pleadings indicate that Plaintiff did not receive a key lock until November 8, 2006. *Docket #38*, Exhibit 13 at pg. 44.

## II. STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there

is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990). Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate. *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

Once the moving party in a summary judgment motion identifies portions of the record which demonstrate the absence of a genuine dispute over material facts, the opposing party may not then "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact," but must make an affirmative evidentiary showing to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). The non-moving party must identify specific facts in affidavits, depositions or other factual material showing

"evidence on which the jury could *reasonably* find for the plaintiff." *Anderson*, 477 U.S. at 252 (emphasis added). If, after sufficient opportunity for discovery, the non-moving party cannot meet that burden, summary judgment is clearly proper. *Celotex Corp.*, 477 U.S. at 322-23.

### III. ANALYSIS

A careful review of Plaintiff's original complaint indicates that the current factual allegations made against Defendant Butler regarding the key locks and single-occupancy cell do not deviate from those found in the former suit. Therefore, the undersigned will not disturb the district court's earlier factual findings. In addition to renewing his Eighth Amendment and ADA claims, Plaintiff now asserts an independent cause of action pursuant to the Equal Protection Clause of the Fourteenth Amendment. *Complaint* at 12.

#### A. ADA Claims Against Butler in Her Individual Capacity

On March 10, 2005, the district court dismissed ADA claims against Butler in her personal capacity, adopting the undersigned's findings. Case no. 03-60095, *Docket #55* at 1; *Id.*; *Docket #49* at 18-20 (*citing Key v. Grayson*, 163 F.Supp. 2d 697, 715-715 (E.D. Mich. 2001)(Gadola, J.)(no individual liability under Title II of the ADA). For this reason, and because this claim is barred by *res judicata*, ADA claims against Butler in her individual capacity should be dismissed.

#### B. Monetary Damages for ADA Claims Against Butler in Her Official Capacity

The district court found in the previous case that because Plaintiff's ADA claims

sounded in equal protection rather than due process, he was not entitled to money damages under the ADA. Case No. 03-60095, *Docket #55* at 2; *Tennessee v. Lane,* 541 U.S. 509, 124 S. Ct., 158 L.Ed.2d 820 (2004); *Popovich v. Cuyahoga County Ct. Of Com. Pl.*, 276 F.3d 308 (6th Cir. 2002). However, the Supreme Court has since decided *U.S. v. Georgia*, 546 U.S. 151, 159, 126 S.Ct. 877, 882, 163 L.Ed.2d 650 (2006).

In *Georgia*, the Supreme Court granted certiorari to consider whether and to what extent Title II of the ADA abrogates state sovereign immunity from money damages. Tony Goodman, the plaintiff/inmate in *Georgia*, brought claims under the ADA as well as under the Eighth Amendment. For decisional purposes, the Supreme Court considered that the "same conduct that violated the Eighth Amendment also violated Title II of the ADA." *Id.*, 546 U.S. at 156. The Supreme Court also clarified that an Eighth Amendment claim by a prison inmate is grounded in the Due Process Clause of the Fourteenth Amendment:

> "Therefore, Goodman's claims for money damages against the State under Title II were evidently based, at least in large part, on conduct that independently violated the provisions of § 1 of the Fourteenth Amendment. See *Louisiana ex rel. Francis v. Resweber*, 329 U.S. 459, 463, 67 S.Ct. 374, 91 L.Ed.2d 422 (1947), (plurality opinion) (the Due Process Clause of the Fourteenth Amendment incorporates the Eighth Amendment's guarantee against cruel and unusual punishment)."

The Supreme Court went on to hold that "insofar as Title II creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity." (emphasis in original). *Id.* at 157. In so holding, the Court distinguished *Tennessee v. Lane* by noting that in *Lane*, the

plaintiffs "were not actually denied constitutional rights." *Id.* Under *U.S. v. Georgia*, then, if a plaintiff has a viable, free-standing Eighth /Fourteenth Amendment claim arising out of the same conduct that supports an ADA claim, state sovereign immunity is abrogated, and money damages are available.[1] I therefore recommend that the Court revisit its finding in the previous case, and permit the claim for ADA monetary damages against Defendant Butler, in her official capacity, to go forward.

### C. Eighth and Fourteenth Amendment Monetary Claims Against Butler in Her Official Capacity

Viewed independently of the ADA claims, Plaintiff's §1983 claims for monetary damages against Butler in her official capacity are subject to dismissal. Generally, claims against defendants in their official capacities, *i.e*, in their capacity as agents of the state under 42 U.S.C. §1983, are subject to dismissal on the basis of the immunity granted by the Eleventh Amendment. *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 66, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). Hence, Plaintiff's claim for monetary damages against Butler in her official capacity are barred. Nonetheless, "immunity does not apply if the lawsuit is filed against a state official for purely injunctive relief enjoining the official from violating federal law." *Ernst v. Rising,* 427 F.3d 351, 358 -359 (6th Cir. 2005); *Ex parte Young,* 209

---

[1] In this case, Plaintiff also alleges a separate § 1983 claim under the Fourteenth Amendment Equal Protection clause. Under *U.S. v. Georgia*, to the extent that Plaintiff's ADA claim is premised on the same conduct as his Equal Protection claim, state sovereign immunity is abrogated, and he can recover monetary damages. *Id*., 546 U.S. at 160-63 (concurring opinion of Stevens, J.).

U.S. 123, 155-56, 28 S.Ct. 441, 452, 52 L.Ed. 714 (1908). Accordingly, because Plaintiff's request for declaratory judgment and the issuance of "an injunction directing that Plaintiff is provided with a single-occupancy room," is purely injunctive relief, it is not barred.[2]

### D. Eighth/Fourteenth Amendment Claims Against Butler in her Individual Capacity / Qualified Immunity

Butler argues that her involvement in Plaintiff's denial of a single-occupancy cell does not amount to a constitutional violation. Alternatively, she contends that even if the Court finds the presence of a constitutional violation, she is nonetheless entitled to qualified immunity. *Defendant's Brief* at 9.

Qualified immunity is an affirmative defense. Under *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), a state official who is performing a discretionary function is protected by qualified immunity unless the Plaintiff shows (1) that the Defendant violated a constitutional right, and (2) the right was clearly established to the extent that a reasonable person in the Defendant's position would know that the conduct complained of was unlawful. In *Higgason v. Stephens*, 288 F.3d 868, 876-877 (6th Cir. 2002), the Sixth Circuit set forth a three-part test to determine whether a government official is entitled to the defense of qualified immunity: (1) was there a violation of a constitutionally protected right; (2) was that right clearly established at the time; and (3) has the plaintiff alleged and shown

---

[2]This portion of Defendant Butler's brief does not address Plaintiff's claim for purely injunctive relief under the ADA. However, consistent with the district court's finding in the previous case, I find that such relief is available. "Plaintiff's ADA Title II claim is permitted to proceed . . . insofar as it seeks prospective injunctive relief against [Butler] in her official capacity." Case no. 03-60095, *Docket #55* at 4.

by sufficient evidence that what the official allegedly did was objectively unreasonable?

To determine whether a constitutional right is "clearly established," a reviewing court looks first to decisions of the United States Supreme Court, then to its own decisions and those of other courts within the circuit, and finally, to decisions of other circuits. *Williams v. Kentucky*, 24 F.3d 1526, 1533 (6th Cir. 1994). Once a defendant has met the burden of affirmatively pleading the defense, the ultimate burden of proof is on the plaintiff to show that a defendant is not entitled to qualified immunity. *Wegener v. Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

### 1. A Constitutional Violation

As discussed above, the district court previously denied Defendant Butler's motion for dismissal on the basis of qualified immunity, adopting the undersigned's recommendation to deny the motion, which found that "Butler was repeatedly informed of Plaintiff's need [and] request for some accommodation for his impairment, both by letter and personal interview." Case No. 03-60095, *Docket #49* at 12.

The same Report and Recommendation also found as follows:

"The affidavits and exhibits may be read to create a fair inference that (1) Butler had some supervisory authority over medical personnel, including Dr. Thakur, with regard to whether Plaintiff was eligible for a single cell; (2) Butler had supervisory authority over JCF nurses, including Nurse Malloy; and (3) Nurse Malloy, who was under Butler's supervision, made a determination that Plaintiff did not qualify for a single cell, after consulting with Butler."

*Id.* at 14-15.

Aside from Plaintiff's deposition testimony that receiving key locks in November, 2006 was helpful in protecting his belongings, Defendant Butler relies entirely on the same evidence used to support her former motion for summary judgment. *See Docket #38*, Exhibits 1-7, 11, 12. Because Defendant has submitted no new evidence to show the absence of a constitutional violation, the district court's previous finding of a question of fact sufficient to survive summary judgment is appropriate here.

### 2. Clearly Established

Defendant argues that even if Plaintiff can show a constitutional violation, "it was not clearly established in 2002 that the medical treatment that [Defendant] gave was constitutionally deficient." *Defendant's Brief* at 11. Defendant contends that Plaintiff's claims merely disputes her "medical judgment" in denying him a single cell, arguing that this alone is insufficient to show a constitutional violation or even medical malpractice. *Id.* Defendant argues that "[s]econd guessing a medical professional's decision does not amount to deliberate indifference." *Id.*

Defendant's "medical judgment" argument is only somewhat applicable. The Complaint does not allege that Defendant neglected to treat or mis-diagnosed his condition in the typical "medical judgment" sense, but rather that Defendant, in her position as Health Unit Manager, refused to assign Plaintiff to a single-occupancy cell after being told that his visual impairments left him vulnerable to predators. Such a right was clearly established at the time of the incidents in question. *See* Case No. 03-60095, *Docket #49* at 17 **(**"[Plaintiff] has presented evidence that Defendant Butler was actually aware of both the underlying

medical condition and the substantial risk that it created, and that she disregarded that risk. This is sufficient for Plaintiff to avoid summary judgment on the question of qualified immunity."); *Farmer v. Brennan,* 511 U.S. 825, 828, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)**.**

### 3. Objectively Unreasonable

Likewise, in light of the fact that this right was clearly established at the time of the incidences, a question of fact remains as to whether Defendant's alleged actions were objectively unreasonable.

### E. Fourteenth Amendment Equal Protection Claims[3]

Defendant argues next that Plaintiff's claims of violations of the Equal Protection Clause of the Fourteenth Amendment and 42 U.S.C. §12131(2) must be dismissed. *Defendant's Brief* at 11. Defendant, noting that Plaintiff is not a member of a suspect class, contends that his claim is unable to survive rational basis scrutiny. *Id.*

The Equal Protection Clause of the Fourteenth Amendment states that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S.C.A. Const.

---

[3] Plaintiff's original complaint, while alleging ADA violations, did not include an independent claim under the equal protection clause of the Fourteenth Amendment. Defendant, requesting dismissal of this claim on its merits, does not argue that the claim is precluded by its omission from the original suit (although *res judicata* is among a list of affirmative defenses). *Docket #22, 38.* Hence, the Court declines to address the issue of claim preclusion at present. *See Leirer v. Ohio Bureau of Motor Vehicles Compliance Unit* 246 Fed.Appx. 372, 375 (6th Cir. 2007).

Amend. XIV § 1. "The states cannot make distinctions which either burden a fundamental right, target a suspect class, or intentionally treat one differently from others similarly situated without any rational basis for the difference." *Radvansky v. City of Olmsted Falls,* 395 F.3d 291, 312 (6th Cir. 2005); *Vacco v. Quill,* 521 U.S. 793, 799, 117 S.Ct. 2293, 138 L.Ed.2d 834 (1997). The Equal Protection clause "embodies the general rule that States must treat like cases alike but may treat unlike cases accordingly." *Id.*; *Vacco*, at 521 U.S. at 799. However, in order for the court to apply strict scrutiny, the plaintiff must "allege that he was denied equal protection of the law based upon an unjustifiable standard such as race, religion, or other arbitrary classification" or was intentionally discriminated against because of his membership in a particular class, not merely that he was treated unfairly as an individual." *Bass v. Robinson,* 167 F.3d 1041, 1050 (6th Cir. 1999)

"Although protected by statutory enactments such as the Americans with Disabilities Act, the disabled do not constitute a 'suspect class' for purposes of equal protection analysis."*Hansen v. Rimel* 104 F.3d 189, 190 (8th Cir. 1997); *Cleburne v. Cleburne Living Ctr., Inc.,* 473 U.S. 432, 442, 105 S.Ct. 3249, 3255-56, 87 L.Ed.2d 313 (1985). Thus, Plaintiff must establish that the refusal to place him in a single-occupancy cell "lack[s] a rational relationship to a legitimate governmental purpose." *Tennessee v. Lane,* 541 U.S. 509, 522, 124 S.Ct. 1978, 1988, 158 L.Ed.2d 820 (2004); *see also Hadix v. Johnson,* 230 F.3d 840, 843 (6th Cir. 2000). "Under rational basis review, a plaintiff faces a severe burden and must 'negate all possible rational justifications for the distinction.'" *Midkiff v. Adams*

*County Regional Water District,* 409 F.3d 758, 770 (6th Cir. 2005)( *citing Gean v. Hattaway,* 330 F.3d 758, 771 (6th Cir.2003)).

Defendant's states her argument for dismissal of the Fourteenth Amendment Equal Protection claim as follows:

> "Butler submits that Mingus does not have a fundamental right to placement in a particular type of housing. Prisoners do not have any right to be housed in any particular type of cell . . . . Butler had a rational basis for denying Mingus' request. She examined his situation and determined he did not qualify for a single room. Of course, Mingus disagrees with her decision but that does not make her decision irrational."

*Defendant's Brief* at 12.

Because Plaintiff's former suit claimed only Eighth Amendment, ADA, and state law claims, the district court was not required to consider a Fourteenth Amendment Equal Protection Claim in its earlier ruling. Nonetheless, in denying summary judgment on the Eight Amendment claims, the district court adopted the undersigned's finding that Plaintiff "presented evidence that Defendant Butler was actually aware of both the underlying medical condition and the substantial risk that it created, and that she disregarded that risk." Case No. 03-60095, *Docket #55*; *Docket #49* at 17:

> "Without assessing whether Plaintiff can ultimately succeed on his §1983 claim . . . there is considerable evidence in the record indicating Butler was aware of several of Plaintiff's medical 'needs.' In two letters to Butler, dated March 1 and 16, 2002, Plaintiff explained that he needed a single room with key locks because his deteriorating eyesight left him and his property vulnerable to predators."

-15-

*Id.*,*Docket #33* at 9. The district court's findings on the Eighth Amendment claims are instructive. While of course, the question of "deliberate indifference" is not the same as lacking a "rational basis, the earlier factual findings are applicable here. While MDOC guidelines for single-occupancy cells state that "Health Care will order a single person cell only when medically necessary," Defendant offers no explanation for the fact that after having determined that Plaintiff's severe vision problems allowed him to be victimized by his cellmates that she nonetheless denied his request for a single-occupancy cell other than to assert, in conclusory fashion, that her decision was "rational." *Docket #38*, Exhibit 12. Defendant's refusal, coupled with Plaintiff's uncontradicted allegation that other similarly disabled prisoners "were provided with single-occupancy rooms," creates a question of fact sufficient to survive the present motion. *Complaint* at 12.

### F. Injunctive Relief

Finally, Defendant contends that Plaintiff's request for injunctive relief should be denied. *Defendant's Brief* at 13. First, Defendant argues that because she no longer works for the MDOC, "any request for injunctive relief against her is moot." *Id.* She also notes that since the inception of this lawsuit, Plaintiff has received key locks - thus his request for key locks is also moot. *Id.*; *see also* Exhibit 13 at pg. 45. Citing *Turner v. Safley*, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), Defendant contends that "[g]ranting injunctive relief would cause substantial harm to the MDOC because this Court would be involving itself in the day to day operations of the MDOC." *Defendant's Brief* at 14.

### 1. Injunctive Relief Against Butler

The fact that Defendant is no longer working at the MDOC precludes Plaintiff's claims for injunctive against her in her individual capacity. However, claims for injunctive relief against her in her *official* capacity are not barred. Although Plaintiff states that he was notified on February 6, 2006 that Defendant was not currently working at the Cotton Correctional Facility, Butler is silent as to whether she was working for the MDOC when the lawsuit was filed on October 6, 2005. *Docket #10* at 7. The Court thus assumes that at the time this claim was filed that Butler was employed by the MDOC. Accordingly, the claims filed against her in her official capacity on October 6, 2005 would be deemed to be directed at the MDOC. "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham,* 473 U.S. 159, 165-166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985). As such, the State's Attorney General has received notice of and duly responded to the official capacity claims against Butler and, in effect, against the MDOC.

### 2. Key Locks

Plaintiff has acknowledged that he received key locks on November 8, 2006. Thus his request for key locks is moot.

### 3. Single-occupancy Room

In contrast, the MDOC has not complied with Plaintiff's request for a single-occupancy room. The district court found previously that a question of fact remained as to

whether the deprivation of a single-occupancy room constituted "deliberate indifference," further allowing Plaintiff's claims for prospective injunctive relief under the ADA to proceed. Aside from the fact that Plaintiff has now been issued key locks, Defendant has forwarded no reason for the undersigned to deviate from the district court's previous findings concerning injunctive relief. *Parker v. Michigan Department of Corrections,* 2001 WL 1736637, *5 (W.D.Mich. 2001).

## IV. CONCLUSION

For these reasons, I recommend the following:

1. ADA Claims against Defendant in her individual capacity should be DISMISSED.

2. The motion for dismissal as to claims for monetary damages under the ADA against Defendant in her official capacity should be DENIED.

3. Claims for monetary damages pursuant to 42 U.S.C. §1983 against Defendant in her official capacity should be DISMISSED.

4. Defendant's motion for dismissal on the basis on qualified immunity should be DENIED.

5. Defendant's motion for dismissal of Plaintiff's Fourteenth Amendment equal protection claims should be DENIED.

6. Defendant's motion for dismissal of Plaintiff request for injunctive relief regarding the issuance of key locks should be GRANTED on the basis on mootness.

7. Defendant's motion for dismissal of Plaintiff's remaining claims for injunctive relief should be DENIED.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sullivan,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: August 21, 2008

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on August 21, 2008.

                                              s/Susan Jefferson
                                              Case Manager